**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **LACEY OGBOLUMANI and** | ) | |
| **DAVID OGBOLUMANI,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 06 C 6009** |
| | ) | |
| **UNITED STATES CITIZENSHIP and** | ) | |
| **IMMIGRATION SERVICES, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' ("Government") motion to dismiss. For the reasons stated below, we grant in part and deny in part the Government's motion.

## BACKGROUND

Plaintiffs David Ogbolumani ("David") and Lacey Ogbolumani ("Lacey") are husband and wife. Plaintiffs allege that David is a citizen of Nigeria and that he first entered the United States on September 30, 1990. Plaintiffs further allege that David entered into a good faith marriage with Lacey, a United States citizen, on May 20,

2000.  On January 16, 2001, Lacey filed a Visa Petition on Form I-130 to classify her husband David as an "immediate relative" of a United States citizen ("Lacey's Visa Petition").  Also on January 16, 2001, David concurrently filed an Application to Adjust Status on Form I-485 to become a lawful permanent resident of the United States ("Adjustment of Status Application").  On May 20, 2002, the Immigration and Naturalization Service ("INS") sent Lacey a "notice of intent to deny petition for alien relative."  This notice advised Lacey that an investigation by the INS had revealed that David had previously entered into a sham marriage in 1997 for the purpose of evading immigration laws, and therefore it was the intention of the INS to deny Lacey's Visa Petition.  On March 25, 2004, the United States Citizenship and Immigration Services ("CIS")(one of the successor agencies to the INS, as of November 25, 2002) denied David's Adjustment of Status Application for the reason that Lacey's Visa Petition had been denied and, therefore, David was not eligible for Adjustment of Status since no visa was available to David.  On October 6, 2006, Lacey's Visa Petition denial was affirmed on appeal by the Board of Immigration Appeals ("BIA"), in a *per curiam* order.

Plaintiffs filed the instant action on November 3, 2006, seeking relief under the Declaratory Judgment Act, 28 U.S.C. § 2202 *et seq.*, and the Administrative Procedures Act, 5 U.S.C. § 702 *et seq.*  Plaintiffs are also alleging "[v]iolations of the

Fifth Amendment, Due Process and Equal Protection Clauses." Plaintiff Lacey claims that the decision by the CIS to deny her Visa Petition should be reversed. Plaintiff David claims that the decision by the CIS to deny his Adjustment of Status Application should be reversed. The Government filed the instant motion to dismiss, asserting that the court lacks jurisdiction to review the CIS's decisions and that Plaintiffs have failed to state a claim with regard to their constitutional claims.

## LEGAL STANDARD

In ruling on a motion to dismiss, brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). In order to withstand a motion to dismiss, a complaint must allege the "operative facts" upon which each claim is based. *Kyle v. Morton High Sch.*, 144 F.3d 448, 454-55 (7th Cir. 1998); *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992). A plaintiff is required to include allegations in the complaint that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'" and "if they do not,

the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)(quoting in part *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1965 (2007)).  Under the current notice pleading standard in federal courts a plaintiff need not "plead facts that, if true, establish each element of a 'cause of action. . . .'" *See Sanjuan v. Amer. Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)(stating that "[a]t this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint" and that "[m]atching facts against legal elements comes later").  The Seventh Circuit has explained that "[o]ne pleads a 'claim for relief' by briefly describing the events." *Sanjuan*, 40 F.3d at 251; *Nance v. Vieregge*, 147 F.3d 589, 590 (7th Cir. 1998)(stating that "[p]laintiffs need not plead facts or legal theories; it is enough to set out a claim for relief").  The plaintiff need not allege all of the facts involved in the claim and can plead conclusions. *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002); *Kyle*, 144 F.3d at 455.  However, any conclusions pled must "'provide the defendant with at least minimal notice of the claim,'" *Kyle*, 144 F.3d at 455 (quoting *Jackson v. Marion County*, 66 F.3d 151, 153-54 (7th Cir. 1995)), and the plaintiff cannot satisfy federal pleading requirements merely "by attaching bare legal conclusions to narrated facts which fail to outline the bases of [his] claims." *Perkins*, 939 F.2d at 466-67.

## DISCUSSION

The Government primarily argues that this court lacks jurisdiction to review both decisions of the CIS, namely the CIS's decision to deny David's Application for Adjustment of Status and the CIS's decision to deny Lacey's Visa Petition. The Government contends that both decisions were discretionary determinations and that this court is stripped of jurisdiction to review the CIS's decisions, pursuant to 8 U.S.C. § 1252(a)(2)(B)(i)&(ii). The Government also moves to dismiss with respect to Plaintiffs' constitutional claims, contending that Plaintiffs have not adequately pled their constitutional claims. Plaintiffs oppose the motion to dismiss contending that this court is not stripped of jurisdiction and that Plaintiffs' complaint states a cause of action for their constitutional claims.

We will first address the issue of Plaintiffs' constitutional claims and we will next address whether the court is stripped of jurisdiction to review (1) the denial by CIS of David's Adjustment of Status Application and (2) the denial by CIS of Lacey's Visa Petition.

I. Constitutional Claims

The Government has filed a motion to dismiss Plaintiffs' constitutional claims arguing that Plaintiffs have not adequately pled their constitutional claims. In their complaint, Plaintiffs state in regard to their constitutional claims, that "due to the statutory scheme, as applied to Plaintiffs, [sic] produced arbitrary and capricious decision-making by federal officials as to when an immigrant visa petition will be approved, [sic] the scheme also violates the Equal Protection Clause of the Fourteenth Amendment." (Compl. Par. 89). Although the Plaintiffs have asserted an Equal Protection claim under the Fourteenth Amendment, "the Fourteenth Amendment applies to the states" and "the Fifth Amendment applies to the federal government and also 'contains an equal protection component.'" *See United States v. Hook*, 471 F.3d 766, 774 (7th Cir. 2006)(quoting in part *San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 542 n. 21 (1987)). Therefore, we will treat Plaintiffs' claims as Due Process and Equal Protection claims under the Fifth Amendment.

Before we discuss whether the Plaintiffs have adequately pled their constitutional claims, it is necessary for us to address the question of whether we are stripped of jurisdiction under 8 U.S.C. § 1252(a)(2)(B)(i)&(ii) to review Plaintiffs' constitutional claims. The Seventh Circuit has found that because § 1255

Adjustment of Status benefit is a discretionary form of relief, specified under § 1252(a)(2)(B)(i), the courts are stripped of jurisdiction to review an alien's constitutional claims relating to Adjustment of Status. *Dave v. Ashcroft*, 363 F.3d 649, 652 (7th Cir. 2004). Therefore, we are stripped of jurisdiction to review David's constitutional claims. As to Lacey's constitutional claims, we note that Lacey filed for a Visa Petition benefit under § 1254, which is not a form of discretionary relief specified under § 1252(a)(2)(B)(i), nor is it considered a discretionary relief under § 1252(a)(2)(B)(ii), as explained later in this opinion. Therefore, we find that § 1252(a)(2)(B)(i)&(ii) jurisdiction-stripping provisions do not apply to a review of the denial of Lacey's constitutional rights relating to her Visa Petition.

In support of Plaintiffs' claim that Lacey's constitutional rights have been violated relating to Lacey's Visa Petition, Plaintiffs have stated in a conclusory fashion that the Government official that interviewed David's first wife in relation to David's first wife's Visa Petition used coercive tactics. (Compl. Par. 45). However, Plaintiffs also have alleged that the interview tactics did not lead David's first wife to withdraw her Visa Petition. (Compl. Par. 45). First, we note that the alleged victim of the constitutional violation was not David or Lacey, but was David's first wife. Second, Plaintiffs have not indicated that the alleged actions by the Government

resulted in a violation of Lacey's constitutional rights.

Plaintiffs have dedicated most of their complaint to legal arguments indicating that Plaintiffs are dissatisfied with the outcome of the adjudication of Lacey's Visa Petition by the CIS. Plaintiffs' conclusory claim as to constitutional violations does not satisfy the federal pleading requirements. *Concentra*, 496 F.3d at 776, *Kyle*, 144 F.3d at 455 (stating that a plaintiff must "provide the defendant with at least minimal notice of the claim"); *see also Perkins*, 939 F.2d at 466-67 (stating that the plaintiff cannot satisfy federal pleading requirements merely "by attaching bare legal conclusions to narrated facts which fail to outline the bases of [his] claims"). There is no indication in the pleadings that either David's or Lacey's Due Process rights were violated. Also, even under the liberal notice pleading standard, Plaintiffs fail to sufficiently plead an Equal Protection claim. Nowhere in the complaint do Plaintiffs allege that they were treated differently because of their race, religion, nationality, or any other protected grounds.

The Government has also contended that Plaintiffs' constitutional claims should be dismissed because neither of the Plaintiffs has a constitutional right to the eventual adjustment of David's status and cites *Hamdan v. Gonzales*, 425 F.3d 1051 (7th Cir. 2005). In *Hamdan*, the Court held that Adjustment of Status is a form of discretionary relief to which an applicant has no Due Process interest and that there

is no jurisdiction over meritless constitutional claims. *Id.* at 1061. We agree with the Government. Plaintiffs have not advanced any viable constitutional claims in their complaint, and Plaintiffs have no constitutional right to the approval of immigration benefits. Therefore, based on the foregoing, we grant the Government's motion to dismiss Plaintiffs' constitutional claims for lack of jurisdiction and for failure to state a claim.

## II. Jurisdiction to Review the CIS's Decisions

Before we address the issue of jurisdiction, we find it beneficial to discuss the procedures relating to certain applicable immigration benefits, more specifically the relationship and the difference between (1) a Visa Petition and (2) an Application for Adjustment of Status to that of a Lawful Permanent Resident, for the purposes of the instant action.

### A. Immigration Law and Procedure

The Immigration and Nationality Act ("INA") is found in Chapter 8 of the United States Code. The INA provides for the issuance of Immigrant Visas in four general categories: (1) Immediate Relatives (spouse, parent, or minor child of a United States citizen, with no annual visa limitations), (2) Family-Based Preferences

(with annual visa limitations), (3) Employment-Based Preferences (with annual visa limitations), and (4) Diversity Visa Immigrants (with annual visa limitations). 8 U.S.C. § 1151. A United States citizen may file a Visa Petition under 8 U.S.C. § 1154(a) to classify an alien spouse, a minor child, or a parent as an "immediate relative," pursuant to 8 U.S.C. § 1151(b)(2)(A)(i), or to classify other family members under the family-based preference category, pursuant to 8 U.S.C. § 1153(a)(1)(3)&(4). The Government is required to investigate each case, and if the Government determines that the facts in the petition are true, the Government "shall" approve the petition. 8 U.S.C. § 1154(b). Pursuant to 8 U.S.C. § 1154(c), no petition on behalf of a spouse of a United States citizen or Lawful Permanent Resident "shall" be approved if the Government determines that the alien spouse has previously entered or attempted to enter into a marriage for the purpose of evading immigration laws. 8 U.S.C. § 1154(c).

An alien beneficiary of an approved Visa Petition who is in the United States and who satisfies the statutory requirements under 8 U.S.C. § 1255 may file an Application for Adjustment of Status to that of a Person Admitted for Permanent Residence, and the granting of such relief is in the discretion of the Attorney General. 8 U.S.C. § 1255.

In order for an alien spouse to become a Lawful Permanent Resident of the

United States, through an Application for Adjustment of Status or an Application for an Immigrant Visa, the United States citizen spouse must first obtain the approval of a Visa Petition, filed on Form I-130, to classify the alien spouse as an "immediate relative" of a United States citizen, pursuant to § 1151(b)(2)(A)(i). *See* 8 C.F.R. 204.2(a)(1). Generally, there are two ways of becoming a Lawful Permanent Resident of the United States for an alien spouse after an *approval* of a Visa Petition classifying the spouse as an "immediate relative." First, if the alien spouse is outside the United States, or is in the United States but is statutorily ineligible to adjust his or her status to that of a Lawful Permanent Resident of the United States, he or she applies for an Immigrant Visa at the American Embassy or Consulate abroad and, after the approval of the Immigrant Visa Application, enters the United States as an Immigrant. 8 U.S.C. §§ 1201-02; 22 C.F.R. § 42; 8 C.F.R. § 204.2(a)(3). Second, if the alien spouse is in the United States, and is statutorily eligible to adjust his or her status to that of a Lawful Permanent Resident of the United States, he or she submits an Application for Adjustment of Status to the CIS. 8 U.S.C. § 1255; 8 C.F.R. § 245.1; 8 C.F.R. § 204.2(a)(3). In both of the above scenarios, an approved Visa Petition is a prerequisite. An Application for Adjustment of Status is not considered properly filed unless a visa is immediately available, and a visa is not available without an approved Visa Petition. 8 C.F.R. § 245.2(a)(2). It is entirely within the

discretion of the CIS whether to grant or deny an Application for Adjustment of Status. 8 U.S.C. § 1255. An alien who is denied an Application for Adjustment of Status in the United States, either because of certain statutory ineligibility to adjust or because in the exercise of discretion the Attorney General or Secretary of Homeland Security has decided to deny the Application, the alien would still be eligible to apply for an Immigrant Visa at an American Embassy or Consulate abroad based upon the approved Visa Petition. 8 U.S.C. §§ 1201-02; 22 C.F.R. § 42; 8 C.F.R. § 204.2(a)(3). Upon the approval of the Immigrant Visa Application, the alien may seek admission to the United States as an Immigrant. 8 U.S.C. §§ 1201-02; 22 C.F.R. § 42; *see also* 8 U.S.C. § 1154(e).

The terms "Immigrant," "Permanent Resident," and "Lawfully Admitted for Permanent Residence," are all used to describe an alien who is a Lawful Permanent Resident of the United States. *See* 8 U.S.C. § 1101(a)(15)&(20); *see also* 8 U.S.C. 1255. A Permanent Resident Card, also commonly known as a "Green Card," is issued on Forms AR-3, AR-103, I-151, or I-551 in connection with "Lawful Admission for Permanent Residence." 8 C.F.R. § 245.2(b); *see also* 8 C.F.R. § 103.2(b)(17). When an Immigrant is admitted to the United States with an Immigrant Visa, such an Immigrant, upon entry, becomes a Lawful Permanent Resident of the United States and is issued a "Green Card." When a non-immigrant,

while in the United States, applies for and is granted an Adjustment of Status under § 1255, such an alien becomes a Lawful Permanent Resident of the United States as of the date of the approval and is issued a Permanent Resident Card (Green Card). 8 C.F.R. § 245.2(a)(5)(ii). We should note that in the case of certain aliens, the obtaining of the status of "Lawfully Admitted for Permanent Residence" is on a conditional basis. *See* 8 U.S.C. § 1186; 8 C.F.R. § 245.1(h).

In both of the above scenarios, when a Visa Petition filed by a United States citizen spouse is approved to classify the alien spouse as an "immediate relative," a visa is immediately available for the alien spouse to either apply to immigrate to the United States at an American Embassy or Consulate abroad, or if in the United States and statutorily eligible, to apply for Adjustment of Status to that of a Lawful Permanent Resident of the United States. 8 U.S.C. § 1154; 8 U.S.C. § 1255; *see also* 8 C.F.R. § 204.2(a)(3); 8 C.F.R. § 245.1(a) ; 22 C.F.R. § 42 *et seq.* (implementing regulations). In contrast, when a Visa Petition filed by a United States citizen is approved on behalf of a family member who is not classified as an "immediate relative," such as an unmarried son or daughter over the age of 21, a married son or daughter, or a sibling, it is possible that, due to oversubscriptions in that visa preference category, visa numbers might not be immediately available for the alien relative to apply for an Immigrant Visa abroad or, if in the United States and

otherwise eligible, to apply for Adjustment of Status.  8 U.S.C. § 1151(c); 8 U.S.C. §

1153(a); 8 U.S.C. § 1154(a)(1)(A)(i); 8 U.S.C. § 1255; *see also* 8 C.F.R. §§ 204.1 &

204.2 ; 8 C.F.R. § 245.1(g)(1)&(2); 22 C.F.R. § 42 *et seq.* (implementing

regulations).  In such a case, after the approval of the Visa Petition, the alien relative

might have to wait for a number of years until a visa becomes available, based upon

the Priority Date (filing date) of the Visa Petition, at which time the alien relative

will be eligible to apply for an Immigrant Visa at an American Embassy or Consulate

abroad, or if in the United States and statutorily eligible, to apply for Adjustment of

Status.  8 U.S.C. § 1151(c); 8 U.S.C. § 1153(a); 8 U.S.C. § 1154(a)(1)(A)(i); 8

U.S.C. § 1255; *see also* 8 C.F.R. § 204.1 & 204.2; 8 C.F.R. 245.1(g)(1)&(2); 22

C.F.R. § 42 *et seq.* (implementing regulations).

    As such, Visa Petition Proceedings are totally distinct and separate from

adjudications of Applications for Immigrant Visas abroad or adjudications of

Applications for Adjustment of Status in the United States.  The approval of a Visa

Petition alone does not confer upon an alien an Immigrant status or make such an

alien a Lawful Permanent Resident of the United States.  The approval of a Visa

Petition, in and of itself, does not entitle the alien beneficiary to enter or remain in

the United States.  It is merely a required classification that makes the alien eligible

to apply for an Immigrant Visa abroad for entry into the United States as an

Immigrant, or if in the United States and statutorily eligible, to apply for Adjustment of Status to that of a Lawful Permanent Resident under § 1255.  Thus, a Visa Petition can also be filed by a United States citizen for an alien relative who has never been to the United States, or for an alien relative who is in the United States but who is not statutorily eligible to apply for Adjustment of Status.  *See* 8 C.F.R. § 204.2(a)(3).  As stated above, even if the alien beneficiary of a Visa Petition is in the United States and is denied Adjustment of Status, the approval of the Visa Petition would still remain valid and the approved Visa Petition would afford the alien the opportunity to apply for an Immigrant Visa at an American Embassy or Consulate abroad.  *Id.*

The fact that immigration regulations, under 8 C.F.R. § 245.2(a)(2)(B), provide for concurrent filing, in certain cases, of (1) an Application for Adjustment of Status together with (2) a Visa Petition does not alter the nature and statutory descriptions of each of the above immigration benefits for the purpose of determining whether the courts are stripped of jurisdiction to review under §§ 1252(a)(2)(B)(i)&(ii).

The Government has contended that this court is stripped of jurisdiction under §§ 1252(a)(2)(B)(i)&(ii) to review the CIS's denial of David's Application for Adjustment of Status.  The Government has also contended that this court is stripped of jurisdiction under § 1252(a)(2)(B)(ii) to review the CIS's denial of Lacey's Visa

Petition.

In § 1252(a)(2), Congress has provided that certain matters are not subject to judicial review. The statutory language in § 1252(a)(2)(B) reads as follows:

(B) Denials of discretionary relief

Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review–

(i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or

(ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) [(Asylum)] of this title.

8 U.S.C. § 1252(a)(2)(B)(i)&(ii).

The Government argues that the CIS's actions or decisions relating to Visa Petitions are discretionary in the context of the jurisdiction-stripping provisions of § 1252(a)(2)(B)(ii). (Mot. Dis. Mem. 8-9). The Government basically argues that, in analyzing our jurisdiction to review, we should lump together Visa Petitions with Applications for Adjustment of Status and attempts to convince the court that they are one and the same. (Mot. Dis. Mem. 4). They are not.

In the instant case, the Plaintiffs have challenged (1) the denial of David's

Adjustment of Status Application and (2) the denial of Lacey's Visa Petition. We will separately discuss below whether or not Congress has stripped the courts of jurisdiction to review each of these decisions by the CIS.

### B. David's Adjustment of Status Application

David's Adjustment of Status Application, filed under § 1255(a), was denied by the CIS for the reason that visa numbers were not available to David, since the CIS had denied the Visa Petition filed by David's United States citizen spouse, Lacey. Under § 1252(a)(2)(B)(i), Congress has specifically stripped the courts of jurisdiction to review any judgment regarding the granting of Adjustment of Status under § 1255. In addition, under § 1252(a)(2)(B)(ii), Congress has stripped the courts of jurisdiction to review any other decision or action of the Attorney General (now, also the Secretary of Homeland Security), the authority for which is specified in the statute to be in the discretion of the Attorney General, other than the granting of relief under 8 U.S.C. § 1158(a)(Asylum). The granting of an application for Adjustment of Status under § 1255 is in the discretion of the Government. Therefore, we find that, pursuant to both §§ 1252(a)(2)(B)(i)&(ii), we lack jurisdiction to review the denial of David's Adjustment of Status Application filed under § 1255(a). For the foregoing reasons, the Government's motion to dismiss Plaintiffs' claim relating to the CIS's denial of David's Adjustment of Status Application based on lack of jurisdiction is granted.

## C. Lacey's Visa Petition

We have found above that Plaintiffs' constitutional claims must fail. We have also found that, pursuant to §§ 1252(a)(2)(B)(i)&(ii) the court is stripped of jurisdiction to review David's Adjustment of Status Application filed under § 1255(a). Therefore, at this juncture, the sole issue left for this court to consider is whether, pursuant to § 1252(a)(2)(B)(ii), the court is stripped of jurisdiction to review the CIS's denial of Lacey's Visa Petition filed under § 1154(a).

Section 1252(a)(2)(B)(ii) strips federal courts of jurisdiction to review decisions or actions of the Government the authority for which is specified in the statute to be in the discretion of the Government. 8 U.S.C. § 1252(a)(2)(B)(ii). The Government argues that the denial of Lacey's Visa Petition was a discretionary decision and, as such, this court is stripped of jurisdiction under § 1252(a)(2)(B)(ii) to review the denial of Lacey's Visa Petition. We disagree.

The parties have not provided the court with any Seventh Circuit precedent on point on the issue of whether or not a Visa Petition denial is a discretionary decision or action of the Attorney General, stripping the courts of jurisdiction to review under § 1252(a)(2)(B)(ii). However, there have been a number of Seventh Circuit precedent decisions on the issue of the jurisdiction-stripping provisions that relate to the "Revocation of Visa Petitions" and other discretionary decisions which we find to be instructive on the issue before us.

1. Seventh Circuit Precedent

a. Relating to Revocations of Approved Visa Petitions

In *El-Khader v. Monica*, 366 F.3d 562 (7th Cir. 2004), the Seventh Circuit held that the *revocation* of a previously-approved Visa Petition by the INS (now CIS) was a discretionary determination and was not subject to judicial review pursuant to jurisdiction-stripping provisions in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996. *Id.* at 567. In *El-Khader*, the Seventh Circuit, on more than five occasions, clearly stated that its decision related to the revocations of previously approved Visa Petitions. In contrasting a Visa Petition revocation from an initial adjudication denying a petition, the Seventh Circuit, in *El-Khader*, went on to say that "the INS has regulations requiring that there be 'substantial and probative' evidence of marriage fraud to *deny* a petition on these grounds." *Id.* at 568 (quoting in part *Ghaly v. INS*, 48 F.3d 1426, 1436 (7th Cir. 1995)(Posner, C.J., concurring)); *see also* 8 C.F.R. § 204.2(a)(1)(ii). The Seventh Circuit then stated that the relevant INS regulations were inapplicable in cases where the INS chose to "exercise its discretion in revoking a visa under section 1155 *after* a petition for that visa has already been granted." *El-Khader*, 366 F.3d at 568 (emphasis in original).

In *Holy Virgin Protection Cathedral of the Russian Orthodox Church Outside Russia v. Chertoff*, 499 F.3d 658 (7th Cir. 2007), the Seventh Circuit affirmed the dismissal of another revocation of a previously-approved employment-based Visa Petition on jurisdictional grounds. *Id.* at 659-60. In *Holy Virgin*, the Seventh Circuit

19

extended the decision in *El-Khader* to find that even the underlying determinations that form the basis of a discretionary decision are also not subject to judicial review. *Id.* In *Holy Virgin*, the Seventh Circuit, on more than six occasions, clearly stated that its decision related to Visa Petition *revocations*. *Id.* The Seventh Circuit in *Holy Virgin* noted that "*El-Khader* contrasted the broad discretion conferred by Section 1155 with the strict requirements in the agency's regulations for the initial issuance of a visa." *Id.* at 661. In *Holy Virgin*, the Seventh Circuit, referring to its decision in *El-Khader*, continued to state "we concluded that while '[i]t is true that the INS has regulations requiring that there must be substantial and probative evidence . . . to deny a petition on these grounds . . . these regulations are inapplicable to those instances where the INS, acting under the authority of the Attorney General, chooses to exercise its discretion in revoking a visa under § 1155. . . ." *Id.* (internal quotations omitted).

### b. Relating to Other Actions or Decisions

In *Leguizamo-Medina v. Gonzales*, 493 F.3d 772 (7th Cir. 2007), the Seventh Circuit in interpreting § 1252(a)(2)(B)(i) stated "when a decision is unreviewable any opinion one way or the other on the propriety of the steps that led to that decision would be an advisory opinion." *Id.* at 775. Section 1252(a)(2)(B)(i) lists various immigration benefits that the courts are stripped of jurisdiction to review and a Visa Petition benefit, under § 1154, is not one of the immigration benefits listed. Therefore, a decision to deny under § 1154, in the first instance, does not relate to an

"unreviewable" decision.  In addition, a Visa Petition approval is a prerequisite to file an Application for Adjustment of Status or an Application for an Immigrant Visa.  It is not a step in the "Adjustment of Status" process.  For example, not all beneficiaries of approved Visa Petitions file for Adjustment of Status in the United States.  As stated earlier in this opinion, a United States citizen can file a Visa Petition for an alien spouse or relative who has never been in the United States. Therefore, *Leguizamo-Medina* is distinguishable from the instant case.

In a recent opinion in *Ali v. Gonzales*, 502 F.3d 659 (7th Cir. 2007), the Seventh Circuit, in interpreting § 1252(a)(2)(B)(ii) reaffirmed its finding in *Leguizamo-Medina* relating to the interpretation of § 1252(a)(2)(B)(i) and found that a decision by an immigration judge to deny a motion for continuance derives from the "judge's authority to conduct and control the course of removal proceedings" as provided in the statute and that it necessarily encompasses the discretion to continue the proceedings.  *Id.* at 663 (emphasis omitted).  The Seventh Circuit concluded that the jurisdiction bar in § 1252(a)(2)(B)(ii) "withdraws from the courts the power to review such rulings when made by an immigration judge."  *Id.* at 663-64 (quoting 8 U.S.C. § 1252(a)(2)(B)(ii)).  Unlike the authority of an immigration judge, derived from statutory authority, to grant or deny a motion for a continuance as a matter of discretion, and the adjudication of a Visa Petition is fact-intensive and the granting of the benefit is derived from the statutory provisions of §§ 1154(b)&(c), which is not discretionary.

2. Relevance of Seventh Circuit Precedent to Visa Petition Denials

The Government relies heavily on *El-Khader* and *Holy Virgin* for its position that this court is stripped of jurisdiction to review the denial of Lacey's Visa Petition. However, the cases cited by the Government do not support the proposition that this court is stripped of jurisdiction under § 1252(a)(2)(B)(ii) to review the denial of a Visa Petition and, to the contrary, the Seventh Circuit cases cited by the Government suggest that this court *is not* stripped of jurisdiction to review the denial of a Visa Petition. First, in both *El-Khader* and *Holy Virgin*, the Seventh Circuit stressed that its opinion in these cases related to *revocations* of previously-approved Visa Petitions under § 1155. Second, *El-Khader* and *Holy Virgin* reaffirmed the fact that the jurisdiction-stripping provisions apply *only* to judgments by the Government specified under § 1252(a)(2)(B)(i) and other decisions or actions of the Government that are discretionary under § 1252(a)(2)(B)(ii)**.** Further, the Seventh Circuit stated in *Holy Virgin*, that *El-Khader* "contrasted the broad discretion conferred by § 1155 with the *strict requirements* in the agency's regulations for the *initial issuance of a visa*." *Holy Virgin*, 499 F.3d at 661 (emphasis added). In *El-Khader*, the Court stated that while "it is true that the INS has regulations requiring that there must be 'substantial and probative' evidence . . . to deny a petition on these grounds . . . these regulations are inapplicable in those instances where the INS, acting under the authority of the Attorney General, chooses to exercise its discretion in revoking a visa under § 1155. . . ." *El-Khader*, 366 F.3d at 568. Therefore, based on the above, it is clear that the Government's reliance on *Holy Virgin* and *El-Khader* in support of

its position that this court is stripped of jurisdiction to review the denial of the Visa

Petition, is misplaced.


### 3. Statutory Differences Between Initial Visa Petitions and Revocations

The language of the statute governing the adjudication of a Visa Petition is

distinguishable from the language in the statute governing a Visa Petition

Revocation.  Visa Petition Revocations are addressed in § 1155, which states, in

relevant part, "[t]he Secretary of Homeland Security *may*, at any time, for what he

deems to be good and sufficient cause, revoke the approval of any petition approved

by him. . . ."  *Id.* (emphasis added).  The Seventh Circuit, has concluded that the

language in § 1155 evinces a congressional intent that Visa Petition Revocations are

within the complete discretion of the Government.  *Holy Virgin*, 499 F.3d at 661.

However, the statutory language governing the procedure for the initial

determination on Visa Petitions is decidedly different.   First, § 1154(b), requires that

"[a]fter an investigation of the facts in each case . . . the Attorney General *shall*, if he

determines that the facts stated in the petition are true . . . approve the petition and

forward one copy thereof to the Department of State."  *Id.* (emphasis added).

Second, the language in § 1154(c), provides that *no petition shall be approved* if it is

determined by the Attorney General that the alien entered or attempted to enter into a

previous marriage for the purpose of evading immigration laws.  *Id.*  In both §

1154(b) and § 1154(c) Congress has used the word "shall," which contrasts with the

language in § 1155, relating to visa revocations, in which Congress used the word

"may."  Both §§ 1154(b)&(c) relate to fact-specific determinations and the underlying Visa Petition benefit is not discretionary.

The underlying basis of a § 1154(c) denial is a determination that the alien previously entered or attempted to enter into a marriage for the purpose of evading immigration laws, and such a determination is fact-specific and does not involve the adjudication of a discretionary benefit.  In § 1154(b), the language used by Congress "after an investigation of the facts," is restrictive language relating to the adjudication of a non-discretionary Visa Petition benefit, as opposed to the adjudication of a discretionary benefit, such as Adjustment of Status.  A Visa Petition approval is a necessary immigration classification which is a precondition to file an application for future Lawful Permanent Resident status, and Congress provided that a decision should not be made without the proper inquiry or investigation.

A relative Visa Petition is filed in order to classify a family member to apply for an immigration benefit.  For example, a United States citizen can file a Visa Petition to classify an alien son or daughter under the Family-Based Preference Category so that the alien son or daughter can apply for an immigration benefit.  The adjudication of such a petition would necessarily require a review of evidence of the petitioner's United States citizenship and a review of the birth certificate of the son or daughter, reflecting the name of the petitioning parent.  Such a review or adjudication does not make the granting of the benefit discretionary.  In another example, a United States citizen can file a Visa Petition to classify an alien spouse as an "immediate relative" so that the alien spouse can apply for an immigration benefit.

The adjudication of such a petition would necessarily require a review of evidence of Petitioner's United States citizenship, a marriage certificate, a divorce certificate, if applicable, and an inquiry into the bona fides of the marriage. Such a review, investigation, or adjudication does not make the granting of the Visa Petition benefit discretionary.

The Government argues that because the Government, in adjudicating Lacey's Visa Petition, must make determinations regarding the alleged previous fraudulent marriage of David, such a determination is discretionary and, thus, the jurisdiction-stripping provisions would apply. Certain actions by the Government, such as Visa Petition Revocations, are discretionary because, by the specific language provided in the statute, the Government "*may, for any reason*," take the action. 8 U.S.C. § 1155. Other actions by the Government, such as the granting of Visa Petitions, are not discretionary because, by the specific language provided in the statute, the Government *shall* make a determination to grant or deny relief *based on the specific facts presented*. 8 U.S.C. § 1154(b). Just because there is an investigation or an inquiry into the facts during an adjudication of a Visa Petition, does not make the granting of the Visa Petition benefit discretionary as contemplated under § 1252(a)(2)(B)(ii).

### 4. Examples of the Distinction in Other Areas of Immigration Law

A review of other immigration benefits provided in the Immigration and Nationality Act is instructive on the issue before us. In § 1252(a)(2)(B)(i), Congress

identified specific discretionary benefits and stripped the courts of jurisdiction to review any judgment regarding the granting of such benefits. The benefits specifically identified are as follows:

(a)  8 U.S.C. § 1182(h) - Waiver Relating to Criminal Excludability Grounds

"[t]he Attorney General *may, in his discretion*, waive. . . ." (emphasis added).


(b)  8 U.S.C. § 1182(i) - Waiver Relating to Fraud Excludability Grounds

"[t]he Attorney General *may, in his discretion*, waive. . . ." (emphasis added).


(c)  8 U.S.C. § 1229b - Cancellation of Removal

"[t]he Attorney General *may* cancel removal. . . ." (emphasis added).


(d)  8 U.S.C. § 1229c - Voluntary Departure

"[t]he Attorney General *may permit* an alien to voluntarily depart the United States. . . ." (emphasis added).


(e)  8 U.S.C. § 1255 - Adjustment of Status

". . . the status of an alien . . . having an approved petition . . . *may* be adjusted by the Attorney General, *in his discretion* . . . to that of an alien lawfully admitted for permanent residence. . . ." (emphasis added).

A review of each of the above sections indicates that the benefits are discretionary by the language specified in the relevant statutes. In each of the above sections, Congress used the words "may" or "discretion" when referring to the Attorney General's authority to grant a benefit.

In addition to stripping the courts of jurisdiction to review the grant of discretionary benefits specified in § 1252(a)(2)(B)(i), Congress provided in § 1252(a)(2)(B)(ii) that courts were also stripped of jurisdiction to review other decisions or actions the authority for which is specified by the INA to be in the discretion of the Attorney General other than the granting of relief under § 1158(a)(Asylum Application). The section relating to Conditions for Granting Asylum is contained in § 1158(b)(1), which states: "[t]he Attorney General *may* grant asylum to an alien . . . if the Attorney General determines that the alien is a refugee within the meaning of 8 U.S.C. § 1101(a)(42)." 8 U.S.C. § 1158(b)(1). The granting of Asylum benefits under § 1158 is a discretionary decision because of the language in the statute, which provides the words "[t]he Attorney General *may* grant asylum," not because of the language in the statute that follows the above language, which indicates ". . . if the Attorney General determines that the alien is a refugee within the meaning of 8 U.S.C. § 1101(a)(42)." 8 U.S.C. § 1158(b)(1). The words, ". . . if the Attorney General determines that the alien is a refugee within the meaning of 8 U.S.C. § 1101(a)(42)" relates to fact-specific findings by the Attorney General relating to the alien's qualifications for Asylum. *See id.*

When we compare the language in the statute relating to Asylum (§ 1158(b)(1)) with the language in the statutes relating to Visa Petitions (§§ 1154(b)&(c)), it is clear that in both Asylum Applications and Visa Petitions the Attorney General must make fact-specific determinations, but in the statutes relating to Visa Petitions (§§ 1154(b)&(c)), Congress used the word "*shall*" when discussing the Attorney General's authority to grant or deny a Visa Petition. This is in contrast to the statute relating to Asylum (§ 1158(b)(1)) where Congress used the word "may" when discussing the Attorney General's authority to grant an Asylum Application.

A review of the statutory language of two different, but somewhat related, immigration benefits under the INA, namely: (1) Asylum (§ 1158(a)), and (2) Restriction of Removal (8 U.S.C. § 1231(b)(3)(A)) (formerly Withholding of Removal), is also instructive on the issue before us. Under § 1158(b)(1), an alien *may* be granted Asylum if the Attorney General "determines" that such alien is a refugee within the meaning of § 1101(a)(42)(stating that the alien must show that he or she was persecuted or has a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion). The inquiry and the determination by the Attorney General, whether the alien has established that he or she is a refugee within the meaning of § 1101(a)(42), is fact intensive. However, even if the alien establishes statutory eligibility, the Attorney General may grant or deny the alien's Application for Asylum as a matter of discretion because of the language in § 1158(b)(1) which states an alien "may" be granted Asylum. This discretionary language is contrasted in § 1231(b)(3)(A)

relating to Restriction of Removal benefit which states "the Attorney General *may not* remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." *Id.* Under both § 1158(a) (Asylum) and § 1231(b)(3)(A) (Restriction of Removal), the Attorney General has to make a determination whether the alien has established a fear of persecution or whether the alien's life or freedom would be threatened in a specific country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion. However, once the Attorney General makes a favorable determination under § 1158(a) (Asylum) that the alien has established past fear of persecution or well-founded fear of future persecution on account of one of the enumerated grounds, the Attorney General may still deny the Asylum Application as a matter of discretion because of the statutory language in § 1158(b)(1). But, in contrast, once the Attorney General makes a favorable determination under § 1231(b)(3)(A) (Restriction of Removal) that the alien has established that his life will be threatened in a country on account of one of the same enumerated grounds as required for Asylum, unlike in the case of an Asylum Application, the Attorney General has no discretion to deny the benefit of Restriction of Removal, and the granting of the benefit is mandatory because of the statutory language in § 1231(b)(3)(A).

When Congress stripped the courts of jurisdiction in § 1252(a)(2)(B)(ii) relating to discretionary decisions or actions of the Attorney General, Congress

specifically provided in the above statute that it was not applicable to any decision under § 1158(a)(Asylum), although the granting of Asylum is a discretionary decision.   However, Congress did not specifically include in the exception a decision under § 1231(b)(3)(A)(Restriction of Removal), obviously because it is a mandatory decision, even though both adjudications (1) Asylum and (2) Restriction of Removal require fact-specific determinations relating to the same enumerated grounds, i.e., persecution based upon an alien's race, religion, nationality, membership in a particular social group, or political opinion.

We should note here that the standards of proof for Asylum benefit and Restriction of Removal benefit are different.  *See INS v. Stevic*, 467 U.S. 407 (1984); *INS v. Cardoza-Fonseca*, 480 U.S. 421 (1987); *see also* 8 C.F.R. §§ 208.13 & 208.16.  However, the fear of persecution relating to both benefits must be based upon the same enumerated grounds, the burden is on the applicant to establish his claim for each of the above benefits, and the Attorney General must make determinations relating to the qualifications of the applicant for each of the above benefits.  As discussed above, because of the statutory language, the granting of the Asylum benefit is discretionary and the granting of the Restriction of Removal benefit is not discretionary.

Finally, the above review, comparison, and analogy demonstrates (1) that Congress has shown that it can provide two different immigration benefits and classify one as discretionary (Asylum) and the other as not discretionary (Restriction of Removal), even though the establishment of both benefits must be based upon the

same enumerated grounds (albeit different standards of proof) and require fact-intensive determinations by the Attorney General, and (2) that just because there are certain fact-specific determinations, investigations, or inquiries by the Government, it does not automatically follow that the underlying immigration benefit becomes discretionary for the purpose of interpreting the jurisdiction-stripping provision under § 1252(a)(2)(B)(ii).

### 5. Decision to Grant or Deny a Visa Petition is Not Discretionary

In the instant case, David was able to submit his Adjustment of Status Application on Form I-485 concurrently with Lacey's Visa Petition on Form I-130 because a visa number would have been available to him if the Visa Petition filed by Lacey was approved. *See* 8 C.F.R. § 245.2(a)(2). Even though the Adjustment of Status Application by David and the Visa Petition by Lacey were allowed to be filed concurrently because of the availability of a visa to David upon approval of Lacey's Visa Petition, as explained above, these are two separate benefits under the immigration laws, and the granting of Adjustment of Status is discretionary while the granting of a Visa Petition is not discretionary for the purposes of the jurisdiction-stripping provision of § 1252(a)(2)(B)(ii).

There is no question that if an alien establishes statutory eligibility for Adjustment of Status in all regards under § 1255, the Government can still deny the benefit of Adjustment of Status because the Government has statutory discretion to do so. For example, in the instant case, if David had established all of the statutory

qualifications for Adjustment of Status, and was the beneficiary of an approved Visa Petition, the Government could have still denied David's Adjustment of Status Application as a matter of pure discretion, and this court under the provisions of §§ 1252(a)(2)(B)(i)&(ii) would be stripped of jurisdiction to review such a denial. In contrast, if a petitioner establishes all of the statutory requirements in a Visa Petition Proceeding, the Government has no statutory authority to deny the Visa Petition as a matter of discretion. 8 U.S.C. § 1154(b). For example, also in the instant case, if Lacey had established all of the statutory requirements necessary for the approval of her Visa Petition, including the production of convincing evidence that David's previous marriage was not entered into for the purpose of evading immigration laws, the Government would have no statutory authority to deny her Visa Petition as a matter of discretion and, thus, this court would not be stripped of jurisdiction under § 1252(a)(2)(B)(ii) to review the Government's decision relating to the denial of the Visa Petition. The above analysis demonstrates that determinations as to qualifications during an adjudication of a specific benefit under the INA, even if favorable to the applicant, do not render the eventual decision under a relevant statute to grant or deny the benefit as one that is in the discretion of the Attorney General pursuant to § 1252(a)(2)(B)(ii). We should be clear that we are not making a determination, at this stage, as to the issue of whether or not Lacey's Visa Petition was properly denied. That is an issue for a summary judgment motion. At this juncture, we are solely making a determination whether or not, pursuant to § 1252(a)(2)(B)(ii), the courts are stripped of jurisdiction to review a Visa Petition

denial.

The statutory language, Seventh Circuit precedent, and context of various immigration benefits discussed above all point unequivocally to the conclusion that § 1252(a)(2)(B)(ii) does not strip the courts of jurisdiction to review a Visa Petition denial. As such, we find that the § 1252(a)(2)(B)(ii) jurisdiction-stripping provision does not apply to a review of the CIS's denial of Lacey's Visa Petition. For the foregoing reasons, the Government's motion to dismiss Plaintiffs' claim relating to the CIS's denial of Lacey's Visa Petition based on lack of jurisdiction is denied.


## CONCLUSION

Based on the foregoing, we grant the Government's motion to dismiss Plaintiffs' constitutional claims. We also grant the Government's motion to dismiss Plaintiffs' claim relating to CIS's denial of David's Adjustment of Status Application. Finally, we deny the Government's motion to dismiss Plaintiffs' claim relating to CIS's denial of Lacey's Visa Petition.


_____
Samuel Der-Yeghiayan
United States District Court Judge


Dated: December 5, 2007